## Brookpark News
### v.
### Cleveland
*[Cite as 5 AOA 119]*

*Case No. 57029*
*Cuyahoga County, (8th)*
*Decided July 19, 1990*

*J. Michael Murray, Steven D. Shafron, Berkman, Gordon, Murray and Palda, 2121 The Illuminating Building, 55 Public Square, Cleveland, Ohio 44113, Clarence D. Rogers, 800 Terminal Tower, Cleveland, Ohio 44113, Jerry B. Kraig, Kraig & Pasz, 623 St. Clair Avenue, N.W., Cleveland, Ohio 44113, for Plaintiff-Appellant.*

*James P. Mancino, Assistant Director of Law, 601 Lakeside Avenue, N.E., Room 106, Cleveland, Ohio 44114, for Defendant-Appellee.*

NAHRA, J.

Brookpark News & Books, Inc. ("Brookpark News") is appealing the decision of the trial court finding City of Cleveland Ordinances 343.01 and 343.11, which regulate the location of adult businesses, constitutional against first and fourteenth amendment challenges. Because appellee, City of Cleveland, failed to show that the effect of the ordinances did not unreasonably limit alternative avenues of communication, we reverse the judgment below.

On December 2, 1983, Brookpark News received a use permit for the retail sales of news and books at 16700 Brookpark. On December 28, 1983, an application was made by Brookpark News to change the use to an adult bookstore and an adult mini-motion picture theater. The re-

quest was denied on the basis that the operation was within 1,000 feet of an existing adult bookstore and a mini-motion picture theater both located at 16500 Brookpark. Those operations were housed in separate buildings on that lot. The proposed use was located within 280 feet of the existing bookstore and 300 feet from the mini-motion picture theater. An appeal was filed with the Board of Zoning Appeals which was denied. That decision was affirmed by the trial court and Brookpark News appealed contending the court erred (1) in denying the appeal where the decision of the Board of Zoning Appeals was contrary to law; (2) in denying the appeal where the decision of the Board was unconstitutional, arbitrary, capricious and unreasonable; (3) in denying the appeal where the Board's decision was unsupported by the evidence; and (4) in not conducting a trial de novo of appellants' request for a variance and permit because appellants raised constitutional issues in their appeal from the Board's decision. This court overruled Brookpark News' first and third contentions, and remanded the case for a hearing on the constitutional issues. *Brookpark News & Books, Inc. v. City of Cleveland* (June 2, 1986), Cuyahoga App. No. 50651, unreported.

At the hearing which began on September 20, 1988, in addition to exhibits introduced into evidence, Dennis Hadick, a builder in the construction business, testified there were only 3.6 acres out of 48,384 acres within the City of Cleveland where an adult bookstore could be located. His conclusions were based on the City's then most current zoning maps, 1987, but said his testimony would be virtually the same using 1983 criteria. Cleveland Detective Margaret Alick of the Vice Squad testified for the City that "adult" operations were scattered throughout Cleveland. On Brookpark Road there were four adult bookstores and movie theaters and a couple of topless bars. She testified prostitution, soliciting and other related crimes were prevalent around "adult" operations and were aggravated

upon congestion of the "adult" operations. Street prostitution was occurring now on Brookpark Road. Ms. Alick also testified that traffic around "adult" operations occurred at all hours because the establishments were open twenty-four hours per day seven days a week.

Following the hearing the parties filed post-trial briefs. On January 4, 1989, the court issued its opinion declaring Sections 343.01 and 343.11 of Cleveland's zoning code constitutional. Brookpark News timely appealed.

## I.

Appellant's first, second, third and fifth assigned errors, which challenge the constitutionality of the City's adult activities' ordinances, will be addressed collectively. They are:

"1. THE TRIAL COURT ERRED IN NOT FINDING THAT SECTIONS 343.01 AND 343.11 OF THE CODE OF THE CITY OF CLEVELAND ABRIDGE FREEDOM OF SPEECH AND OF THE PRESS AND DENY EQUAL PROTECTION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

"2. THE TRIAL COURT ERRED IN NOT FINDING THAT THE ADULT USE ZONING ORDINANCE IS UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

"3. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE ADULT USE ORDINANCES UNCONSTITUTIONALLY REGULATE AND RESTRICT COMPETITION IN THE MARKETPLACE AND ARE THUS IMPROPERLY ENACTED ZONING ORDINANCES.

"5. THE TRIAL COURT ERRED BY APPLYING INCORRECT LEGAL STANDARDS TO ASSESS THE VALIDITY OF THE ADULT USE ZONING ORDINANCE BY PRESUMING IT CONSTITUTIONAL, WHEN IN FACT, NO PRESUMPTION OF VALIDITY ATTACHES, AND BY IMPOSING THE BURDEN OF PROVING THE ORDINANCE UNCONSTITUTIONAL UPON APPELLANT WHEN THE BURDEN RESTS UPON THE CITY TO JUSTIFY THE ORDINANCE."

The two ordinances under attack, Sections 343.01[1] and 343.11,[2] govern the local and general retail business districts, respectively. Adult book stores in local retail business districts are prohibited from locating within 1,000 feet from another adult book store or any church, hospital, school, library, playground or other institutional occupancy use and, absent a waiver, any residential district. The same restrictions apply to adult book stores and adult mini-motion picture theaters in general retail business districts. In addition, no adult book store or adult mini-motion picture theater may locate within 1,000 feet of any other adult book store, adult motion picture theater, adult mini-motion picture theater, adult entertainment cabaret, pool or billiard halls, or premises where pinball machines are used substantially. Appellant contends these restrictions are vague, amount to prior restraints, control competition, were not demonstrated to serve a substantial government interest and were not narrowly drawn.

A city may regulate the location of adult businesses within a comprehensive zoning scheme as long as the regulations are designed to serve a substantial governmental interest and do not limit unreasonably alternative avenues of communication. *City of Renton v. Playtime Theatres Inc.* (1986), 475 U.S. 41; *see Young v. American Mini Theatres Inc.* (1976), 427 U.S. 50. The substantial governmental interest involved here is the preservation of the quality of urban life. At the time the original adult usage regulation was enacted in 1975, the preamble provided that:

"Whereas, the presence, establishment and concentration of "Adult" movie theatres and adult "Book" Stores, as defined herein, in various areas throughout the City of Cleveland has certain adverse effects in the neighborhoods in which such businesses are situated which tend to contribute to the blighting and downgrading of surrounding neighborhoods, of causing said surrounding neighborhoods to give the appearance of decline, both economically and residentially; and

"Whereas, this ordinance constitutes an emergency measure providing for the immediate preservation of the public peace, property and safety . . . ."

Although no evidence, if available, was presented at the 1988 hearing concerning the original enactment, it is apparent that adverse secondary effects may and do occur around these adult businesses. *See, e.g., Renton,* 475 U.S. 41. Testimony at the hearing in the trial court concerning prostitution and related crimes and testimony at appellant's change of use hearing

before the Board of Zoning Appeals concerning the appearance of the area on Brookpark Road confirms these problems exist. The United States Supreme Court reaffirmed its recognition of a substantial governmental interest in a city's attempt to preserve the quality of urban life, *Renton,* 475 U.S. at 50, and stated that "[c]ities may regulate adult theaters by 'dispersing them, as in Detroit, or by effectively concentrating them, as in Renton." *Id.* at 52. Thus, it is no longer open to debate whether a substantial governmental interest exists in the regulation of the location of adult businesses to prevent urban blight. *See, e.g., Alexander v. City of Minneapolis* (1989), 713 F. Supp. 1296, 1301-04.

In order to pass constitutional muster, Cleveland ordinances 343.01 and 343.11 must also be narrowly tailored to meet the City's objectives leaving open adequate channels of communication. Although appellee has not prohibited the operation of adult establishments within its boundaries, but has set 1,000 foot limitations analogous to the 1,000 foot restrictions upheld in *Renton* and *Young,* the effect of these restrictions, according to Brookpark News' evidence, is to limit the availability of adult bookstores to three areas constituting 3.6 acres, which is only seven one-hundred-thousandths of one percent (.00007) of the 48,384 acres comprising the City of Cleveland.[3] Appellant's evidence was unrebutted. This percentage of available adult usage in a city the size of Cleveland on its face is unduly restrictive and significantly curtails freedom of expression and access to protected speech. In *Young v. American Mini Theatres, Inc.,* where the Court upheld 1,000 foot restrictions between any two regulated uses, in a note to the plurality opinion, Justice Stevens stated that:

"The situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech. Here, however, the District Court specifically found that '[t]he Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight.' 373 F. Supp. at 370. 427 U.S. 50, 71 n.35. The fact that a new adult operation has to compete with existing adult operations for space to locate within Cleveland does not render the City's ordinances unconstitutional. *See Renton,* 475 U.S. 41, 53-56. It is the fact that only 3.6 acres out of nearly 50,000 acres are available for adult expression which renders the ordinances unconstitutional.[4] While this court is hesitant to enter the realm of what amount of zoned adult usage is actually necessary to meet constitutional standards for fear of becoming a supreme zoning board of municipalities, appellee has presented no authority where restrictions having the effect of those herein have been upheld, and we decline to do so on the record before us. Accordingly, Brookpark News' first amendment constitutional challenge is sustained.

II.

Appellant's remaining assigned error is that: "4. THE TRIAL COURT ERRED IN NOT FINDING THAT APPELLANT WAS ENTITLED TO PREVAIL ON NON-CONSTITUTIONAL ARGUMENTS ARISING OUT OF ITS VAGUENESS CHALLENGES TO THE ADULT USE ZONING LAWS."

The substance of this assignment of error was raised and addressed previously by this court, *see Brookpark News & Books, Inc.* (May 22, 1986), Cuyahoga App. No. 50651, unreported, or could have been. The only issues remanded to the trial court for resolution were the constitutional questions and those are the only issues we will address in this appeal. Accordingly, this assignment of error is overruled. The judgment of the trial court is reversed.

This cause is reversed for proceedings consistent with this opinion.

It is, therefore, considered that said appellant recover of said appellee its costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

*Judgment reversed and*
*cause remanded.*

DYKE, J., concurs.

PATTON, C.J., concurs in judgment only.

---

[1] See Appendix for full text of ordinance.

[2] *Id.*

[3] Appellee's evidence did not show otherwise so we assume these statistics include existing operations.

[4] The United States District Court for the Northern District of Ohio has recently granted a preliminary injunction on constitutional grounds restraining the City from enforcing

the same ordinances under consideration here against another adult operation. *Morscott, Inc. v. City of Cleveland* (N.D. Ohio, May 23, 1990), Case No. 1:90CV0027.

*APPENDIX*

Section 343.01, effective April 14, 1988, provides, in relevant part, as follows:

"343.01 Local Retail Business District.

"(a) Definitions. For the purposes of this chapter, certain terms are defined as follows:

"(1) 'Local Retail District'" means a business district adjacent to or surrounded on at least three sides by Residence Districts in which such uses are permitted as are normally required for the daily local retail business needs of the residents of the locality only.

"(2) 'Adult Book Store' means an establishment having as a substantial and significant portion of its stock in trade in books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas', (as defined below).

" . . .

"(b) Permitted Buildings and Uses.

The following buildings and uses are permitted in a Local Retail Business District; and no buildings or premises shall hereafter be erected, altered, used, arranged or designed to be used, in whole or in part for other than one or more of the following specified uses, and there shall be no display of goods in front of a setback building line.

"(2) Retail business for local or neighborhood needs to the following limited extent:

" . . .

"(E) The sale of books, magazines, newspapers, cigars, drugs, flowers, gifts, music, photographic goods, sporting goods, stationery, provided however, that no adult book store shall be within 1,000 feet of another adult-book score. Nor shall such adult book stores be within 1,000 feet from any church, hospital, school, library or playground or to any other use classified as institutional occupancy, nor within 1,000 feet in C]hapter 33? of the Codified Ordinances of Cleveland, 1976. This prohibition, with respect to the distance from residential districts shall be waived upon presentment to the City Planning Commission of a valid petition requesting such waiver, signed by fifty-one percent (51%) of those persons only, residing or doing business with 1,000 feet of the proposed location. The City Planning Commission shall supply such petitions

upon request of any resident affected by this section."

"The circulator of the petition requesting a waiver shall subscribe to an affidavit attesting to the fact that the petition was circulated in accordance with this section and that the circulator personally witnessed the signatures on the petition and that the same were affixed to the petition by the person whose name appeared thereon." Section 343.11, effective June 15, 1988, provides, in pertinent part, as follows:

"343.11 General Retail Business Districts

"(a) Definitions. For the purposes of this chapter, certain terms are defined as follows:

"(1) 'General retail business' means an enterprise for profit for the convenience and service of, and dealing directly with, and accessible to, the ultimate consumer; neither injurious to adjacent premises or to the occupants thereof by reason of the emission of cinders, dust, fumes, noise, odors, refuse matter, smoke, vapor or vibrations; nor dangerous to life or property. It includes buildings or spaces necessary to a permitted use for making or storing articles to be sold at retail on the premises. Except as provided in subsection (b) hereof, it does not include any establishment which supplies a retail cutlet other than that on the premises, or any building or use specifically mentioned as permitted only in a Semi-Industry or Industry District.

"(2) 'Adult entertainment' means any of the services, activities, or goods provided or offered by any of the kinds of establishments defined in subsections (a) (3) through (a) (5) below.

"(3) 'Adult book store' means an establishment as defined in Section 343.01(a) (2).

"(4) 'Adult motion picture theatre' means an enclosed building with a capacity of fifty or more persons used for presenting material distinguished or characterized by an emphasis on material depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas' (as defined below) for observation by patrons therein.

"(5) 'Adult mini motion picture theatre' means an enclosed building with a capacity of less than fifty persons used for presenting material distinguished or characterized by an emphasis on material depicting, describing or relating to "specified sexual activities" or "specified anatomical areas" (as defined below) for observation by patrons therein.

"(6) 'Adult entertainment cabaret' means an establishment which features topless dancers, exotic dancers, strippers or similar entertainers exhibiting specified anatomical areas as defined in subsection (a) (8) hereof.

" . . .

"(b) Permitted Buildings and Uses.

The following buildings and uses are permitted in a General Retail Business District; and no buildings or premises shall hereafter be erected, altered, used, arranged or designed to be used, in whole or in part for other than one or more of the following specified uses:

"(1) Except as otherwise provided in this Zoning Code, all uses permitted and as regulated in any Local Retail Business District.

"(2) All retail business uses and buildings specified in Section 343.01(b) (2), and uses and buildings to provide for:

"L. Amusement and recreation: armory, assembly hall, bowling alley, dance hall, pool and billiards, theatre, skating rink or other social, sport or recreational center operated as a business, provided the place or building in which it is operated is sufficiently sound-insulated to effectively confine the noise to the premises, and provided further that such building or premises is located in conformity with the provisions of Section 347.03; provided, however, that none of the following uses shall be located within 1,000 feet of the same or another of the following uses:

"1. Adult book store.

"2. Adult motion picture theatre.

"3. Adult mini motion picture theatre.

"4. Adult entertainment cabaret.

"5. Pool or billiard halls.

"6. premises having as their main or primary use pinball machines."

Provided further that the use as specified in subsection L.1. through L.6. inclusive of this subsection shall not be within 1,000 feet of any church, hospital, school, library or playground or to any other use classified as institutional occupancy, nor within 1,000 feet of a residential district as set forth in Chapter 337 of the Codified Ordinances of Cleveland, Ohio, 1976. This prohibition with respect to the distance from residential districts shall be waived upon presentment to the City Planning Commission of a valid petition requesting such waiver, signed by fifty-one percent (51%) of those persons only, residing or doing business within 1,000 feet of the proposed location. The City Planning Commission shall supply such petitions upon request of any resident affected by this subsection.

The circulator of the petition requesting a waiver shall subscribe to an affidavit attesting to the fact that the petition was circulated in accord with this section and that the circulator personally witnessed the signatures on the petition and that the same were affixed to the petition by the person whose name appeared thereon.

Provided further that no permit premises shall have or offer more than one of the uses in subsection L.1. through L.4. inclusive of this subsection.