UNION TOWNSHIP BOARD OF TRUSTEES, Appellee,

v.

OLD 74 CORPORATION, Subsidiary of ASDF Corporation,
d.b.a. Rumors, Appellant, et al.

[Cite as *Union Twp. Bd. of Trustees v. Old 74 Corp.* (2000), 137 Ohio App.3d 289.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA99–07–073.

Decided April 24, 2000.

*Schroeder, Maundrell, Barbiere & Powers* and *Lawrence E. Barbiere,* for appellee.

*Berkman, Gordon, Murray & DeVan, J. Michael Murray* and *Jeremy A. Rosenbaum,* for appellant, ASDF Corporation.

VALEN, Judge.

Defendant-appellant, ASDF Corporation, appeals a decision of the Clermont County Court of Common Pleas granting a preliminary injunction that prohibits appellant from operating an adult cabaret without meeting the requirements of Union Township's zoning resolution. ASDF contends that Union Township's zoning resolution is unconstitutional, while Union Township contends that it is a content-neutral regulation that passes constitutional scrutiny.

ASDF operated Rumors, a business that presented performances by female dancers through its subsidiary, Old 74 Corporation,[1] in Union Township. As part of these performances, dancers would remove articles of clothing so as to appear in a state of nudity. Appellee, Union Township Board of Trustees ("Union Township"), sought to stop the performances on the ground that the use violated Article 12 of the township's zoning resolution ("the resolution").

Article 12 of the resolution regulates sexually oriented businesses in Union Township. Article 12 applies to several types of businesses, including adult arcades, adult bookstores and video stores, adult cabarets, adult motels, adult motion picture theaters, adult theaters, massage parlors, sexual encounter establishments, escort agencies, and nude model studios. An adult cabaret is defined as "a nightclub, bar, restaurant bottle club, or similar commercial establishment,

---

1. By stipulation, ASDF was substituted as a party defendant for Old 74 Corporation.

whether or not alcoholic beverages are served, in which persons appear in a state of nudity in performance of their duties."

The resolution provides that sexually oriented businesses may locate in the B–1 business zone. A sexually oriented business cannot be operated within one thousand feet of the property line of certain other uses, including churches, schools, public parks, and property used for residential uses. In addition, a sexually oriented business cannot locate within one thousand feet of another sexually oriented business. A zoning permit must be obtained before operating a sexually oriented business.

ASDF did not attempt to obtain a zoning permit for an adult cabaret before beginning operation of Rumors. Union Township filed a complaint against ASDF and Kathy Stotler, the owner of the property,[2] in the Clermont County Court of Common Pleas on April 2, 1999. The complaint alleged that Rumors was in violation of the township's zoning ordinance and requested a temporary restraining order. The complaint also requested both a preliminary and a permanent injunction. A hearing was held on the motion for a temporary restraining order on April 5, 1999. This motion was denied in a decision filed by the trial court on April 6, 1999. ASDF and Stotler filed answers to the complaint and asserted defenses based upon the unconstitutionality of the resolution. ASDF also asserted a counterclaim against Union Township based on the unconstitutionality of the resolution in its answer to the complaint.

On May 3, 1999, ASDF filed a motion for a preliminary injunction and a memorandum in opposition to Union Township's motion for a preliminary injunction. Stotler filed a memorandum supporting ASDF"s position. On May 6, 1999, the trial court held a hearing on the cross-motions for a preliminary injunction. Brian Elliff, the director of planning and zoning for Union Township, testified that he is in charge of interpreting and enforcing the zoning resolution. He testified regarding the zoning requirements a business must meet to operate an adult cabaret and what sites are available in Union Township for sexually oriented businesses. Elliff participated in a deposition prior to the hearing that was also admitted into evidence.

Concerning the issue of available sites for sexually oriented businesses, Ken Geis, Union Township Administrator, testified regarding a map he had prepared that indicates areas in which sexually oriented businesses may locate within the zoning requirements. Robert McLaughlin, a land-use planner and local government consultant, testified that he was asked by ASDF to review the zoning

---

**2.** Although Kathy Stotler was a defendant in the proceedings below, she has not filed a separate notice of appeal and references to "appellant" in this decision refer to ASDF Corporation.

resolution for the presence or absence of procedural safeguards and to determine what sites are available for sexually oriented businesses.

The parties also entered into stipulations for the purpose of the preliminary injunction hearing. The stipulations included a statement that, as part of the performances, female dancers, performing to music, remove articles of clothing so as to appear in a state of nudity as is defined in Article 12 of the zoning resolution. The parties stipulated that the trustees relied on studies pertaining to the negative effects of sexually oriented businesses in enacting Article 12 of the zoning resolution. Finally, the parties stipulated that the erotic dance performances at Rumors have constitutional protection and that this case does not involve a claim that the performances are obscene.

Following the hearing, the parties filed briefs and reply briefs with respect to the cross-motions for preliminary injunction. On June 18, 1999, the trial court issued a decision preliminarily enjoining ASDF from operating a sexually oriented business. The trial court questioned the validity of two of the provisions of Article 12 that required a fee for the zoning permit and that required an annual renewal of the permit. The trial court indicated that further evidence would be necessary on the constitutionality of these provisions at the final hearing and enjoined Union Township from enforcing the two sections. An order on the decision was issued June 24, 1999, by the trial court.

ASDF appealed and filed a motion with this court for a stay of the injunction pending appeal. The motion for a stay was denied by this court on August 18, 1999. ASDF appeals the trial court's decision to grant a preliminary injunction against the operation of Rumors and raises the following assignment of error:

"The trial court erred, as a matter of law and to ASDF Corp.'s prejudice, in granting preliminary injunctive relief against ASDF''s presentation of constitutionally protected dance performances absent ASDF''s compliance with a zoning and licensing scheme that is patently unconstitutional under the free speech guarantees of the federal and Ohio Constitutions, and in denying ASDF preliminary injunctive relief against enforcement of that scheme."

Initially, we note that Union Township's request for an injunction was filed pursuant to R.C. 519.24. This provision authorizes a township zoning board to institute an action for an injunction when a building or land is used in violation of a township's zoning laws. Because the statute grants the injunctive remedy, Union Township was not required to plead or prove an irreparable injury or that there is no adequate remedy at law, as is required by Civ.R. 65. *Kroeger v. Std. Oil Co.* (Aug. 7, 1989), Clermont App. Nos. CA88–11–086 and CA88–11–087, unreported, 1989 WL 87837; *Miller v. Byler* (Mar. 11, 1991), Stark App. No. CA–8262, unreported, 1991 WL 34877. Union Township was required to demonstrate

only that the property was being used in violation of the zoning ordinance. We also note that since ASDF did not apply for a zoning permit to operate Rumors, ASDF lacks standing to make an "as applied" attack on the constitutionality of the resolution. An "as applied" challenge contends that the law is unconstitutional as applied to the challenger's particular activity, while a facial challenge is decided without regard to extrinsic facts. Therefore, ASDF is limited to a facial challenge of the constitutionality of the resolution.

ASDF contends that the zoning resolution is unconstitutional and raises several arguments to support this contention. ASDF argues that the resolution does not allow a business that offers nude dance performances to locate anywhere as a matter of right. ASDF further argues that the resolution fails to limit discretion, provide for a prompt decision, or provide for a prompt judicial review. ASDF also contends that the trial court's interpretation of the resolution is contrary to free speech principles and traditional rules of construction. Appellant further contends that Union Township has failed to allow ample alternate avenues of communication. Union Township contends that its resolution is a content-neutral regulation that passes constitutional scrutiny.

It is well established that all legislative enactments enjoy a presumption of constitutionality. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450. Courts must apply "all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." *Id.* When considering the constitutionality of an ordinance, a court should not declare it unconstitutional if there is a rational way, through liberal construction, to preserve its constitutionality. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 56, 330 N.E.2d 896, 898–899; see *Cincinnati v. Karlan* (1974), 39 Ohio St.2d 107, 108, 68 O.O.2d 62, 63, 314 N.E.2d 162, 163. Zoning ordinances are presumed constitutional unless a court determines that the regulation is "clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 214, 690 N.E.2d 510, 515.

We first review the text of the resolution, as ASDF contends that the trial court's interpretation of Article 12 is contrary to free speech principles and traditional rules of construction. ASDF argues that the trial court rewrote language that clearly expresses a contrary intent and deviated from the language of the resolution in several respects. ASDF contends that the resolution requires both a conditional use zoning certificate and an annual permit to operate the specific type of adult use. The trial court found that Article 12 requires only a zoning certificate for a sexually oriented business. The trial court further found

that the resolution provided limited standards for the grant or denial of the permit.

As discussed above, Article 12 of the resolution is applicable to sexually oriented businesses. Section 1200 of Article 12 states that the purpose of Article 12 is to "regulate sexually oriented businesses to promote the health, safety, morals, and general welfare [3] of citizens of the Township and to establish reasonable and uniform regulations to prevent any deleterious location and concentration of sexually oriented businesses within the Township, thereby reducing or eliminating the adverse secondary effects from such sexually oriented businesses." (Footnote added.)

Sections 1201 and 1202 state that "[t]he establishment of a sexually oriented business shall be permitted as a Conditional Use only in the B–1, Business Zone" and that such a use is "listed as permissible." The locational requirements for sexually oriented businesses listed in Sections 1202 and 1203 provide that the · distance between uses is measured in a straight line from property line to property line.

Section 1204 is entitled "Permit Required" and states that "a valid Zoning Certificate for a Conditional Use for a sexually oriented business permit" must be obtained before the business will be permitted to operate. An applicant must complete an application, pay an application fee, and submit a map indicating the land uses within one thousand feet of the site. Like other businesses, the sexually oriented business must meet the requirements for a site plan review as outlined in Article 11 and the property must also meet all the underlying conditions that are applicable to the B–1 business district.

Section 1204(7) is entitled "Denial of Application for Permit." It includes four criteria for the denial of a sexually oriented business zoning permit:

"(1) An applicant has failed to provide information required by this Section or permit application for the issuance of the permit or has falsely answered a question or request for information on the application form.

"(2) The application or permit fees required by this Article have not been paid.

---

3. Although the issue has not been raised on appeal, we note that the purpose provision includes a statement that Article 12 was enacted, in part, to promote "the general welfare of citizens." However, R.C. 519.02, which provides the specific statutory powers of townships, does not grant townships the authority to use zoning powers to further the "general welfare." Instead, R.C. 519.02 grants statutory authority to townships to enact zoning only for "the purpose of promoting the public health, safety, and morals." Although the township is without power to enact the provision only for "the general welfare," since the purpose provision also includes "public health, safety and morals," Union Township did not exceed its statutory authority in enacting the provision.

"(3) An applicant of the proposed business is in violation of or is not in compliance with the zoning locational requirements for a sexually oriented business.

"(4) If a person applies for a permit for a business or site for which a denial of a previous application for a permit at the location was issued, and there has not been an intervening change in the circumstances which could reasonably be expected to lead to a different decision regarding the former reasons for denial, the application shall be denied."

No provision in Article 12 discusses time limitations on the grant or denial of a zoning permit. Another part of the zoning resolution, Article 2, discusses administration of the resolution. Section 212 of Article 2 is entitled "Approval of Zoning Permit" and provides that the zoning director must make a decision to approve or reject an application for a zoning permit within ten days. If the zoning director denies an application, he must notify the applicant and state the reasons for the denial. If a permit is denied, the applicant may appeal the zoning director's decision. The appeal process is discussed in Section 1208 of Article 12, which provides that an applicant may seek review of a denial through the board of zoning appeals. Therefore, the provisions of Article 2 apply to the enforcement of Article 12.

According to Section 1206, a permit for a sexually oriented business must be renewed every year by making a new application. Enforcement of this requirement was enjoined by the trial court. Article 12 provides the conditions under which a permit may be revoked, the conditions for advertising and lighting, and the conditions for the hours of operation.[4]

Section 12 states that all applicants for an adult cabaret must also obtain a cabaret license prior to submitting an application for a zoning permit. Elliff testified that a cabaret license was required when Article 12 was drafted, but is no longer required due to a court ruling that struck down the licensing scheme as unconstitutional.[5] Elliff testified that the unconstitutional provisions of the

---

**4.** As part of its argument regarding the trial court's interpretation of Article 12, appellant contends that Article 12 as written, like case law, distinguishes between zoning issues and operational issues and that the trial court's interpretation obliterates this distinction. We note that the Ohio Supreme Court has held that a township's zoning authority is limited to the powers specifically conferred in R.C. 519.02 and does not extend to operational requirements, such as the hours of operation. *Bainbridge Twp. Bd. of Trustees v. Funtime, Inc.* (1990), 55 Ohio St.3d 106, 563 N.E.2d 717. Although Article 12 contains a provision that sets forth hours of operation, appellant has not specifically raised this statutory issue on appeal and has limited its assignment of error to the constitutional challenges under the First Amendment. Therefore, we will not address this issue.

**5.** The licensing requirements adopted by Union Township were held unconstitutional in federal court. *Old 74 Corp. v. Union Twp. Bd. of Trustees* (June 27, 1997), S.D.Ohio No. C-1-

cabaret license requirement have not been removed since it is not necessary according to Section 140, Article 1 of the resolution, which provides:

"Should any section or provision of this Zoning Resolution be declared by the courts to be unconstitutional or invalid, such decision shall not affect the validity of the Resolution as a whole, or any part thereof other than the part so declared to be unconstitutional."

■ ASDF argues that because the term "Conditional Use" is used within Article 12, the conditional use provisions of Article 4, which allow for considerable discretion on the part of the zoning board, apply to the adult uses listed in Article 12. ASDF contends that a prerequisite to obtaining a sexually oriented business permit is receipt of a conditional use zoning certificate. We disagree. The resolution states that "the establishment of a sexually oriented business shall be permitted as a Conditional Use in the B–1, business zone." Section 1202 indicates that the use is "listed as permissible." Elliff testified that sexually oriented businesses are a permitted use and are allowed as a matter of right subject to meeting the criteria stated in Article 12. Elliff indicated that the reference in Article 12 to "Conditional Use" is simply a reference to the conditions set forth in Article 12. The resolution also states that a "Zoning Certificate for a Conditional Use permit for a sexually oriented business permit" is required. ASDF attempts to read this requirement as a "Zoning Certificate for a Conditional Use *and* a permit for a sexually oriented business." (Emphasis added.) Elliff stated that within Article 12, a conditional use permit and zoning permit are the same thing.

Section 311(2), Article 3 states that the zoning director is charged with the responsibility to "[e]nforce the provisions of this Resolution and interpret the meaning and application of its provisions." As the zoning director, Elliff is responsible for interpreting the meaning and application of the provisions of the zoning resolution.

The other provisions of the zoning resolution that discuss conditional use permit reference Article 4, while the reference to conditional use permits in Article 12 does not reference Article 4. We also find ASDF's interpretation not only incongruous with the language of the resolution but also with its purpose. The procedure to obtain a conditional use permit in Article 4 encompasses a review of general considerations such as the location and neighborhood of the proposed use. In Article 12, the specific location and other criteria have been specifically listed. It would be inconsistent to require an applicant to meet the

96–079, unreported, affirmed *Old 74 Corp. v. Union Twp. Bd. of Trustees* (C.A. 6, 1998), 166 F.3d 1214. The licensing provision required health and safety inspections and investigations, along with a background check.

general requirements of Article 4 as a prerequisite and in addition to meet the specific criteria listed in Article 12.

We are unable to find that Article 12 expresses a contrary intent as asserted by ASDF. While we find Section 12 is inartfully worded and could have been phrased in a more precise manner and in clearer terms, the trial court's interpretation is consistent with the language and intent of the provision.

█ We also find no error in the trial court's determination that the zoning director does not have unbridled discretion. The zoning director is required to issue a zoning permit unless the application falls under one of the enumerated requirements for denial in Section 1204. When read in conjunction with Article 2, the resolution requires the zoning director either to grant or deny an application for a permit to operate a sexually oriented business within ten days. Accordingly, we find no error in the trial court's interpretation of the resolution.

█ We next examine whether the resolution is a legitimate content-neutral regulation. Content-neutral time, place, and manner restrictions on protected speech are constitutional if they are designed to serve a substantial governmental interest and leave open adequate channels of communication. *Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 47 106 S.Ct. 925, 928, 89 L.Ed.2d 29, 37–38; *Brookpark News & Books, Inc. v. Cleveland* (1990), 66 Ohio App.3d 613, 617, 585 N.E.2d 908, 910.

In *Renton*, the United States Supreme Court recognized that zoning ordinances that regulate the location of adult uses are content-neutral if they are aimed at the secondary effects of adult businesses and not at the content of the adult business. *Renton* at 49–50, 106 S.Ct. at 928–929, 89 L.Ed.2d at 39–40. See, also, *Erie v. Pap's A.M.* (2000), 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265. In *Renton*, the court stated that with respect to sexually oriented businesses, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to content-neutral time, place, and manner regulations. *Renton* at 49–50, 106 S.Ct. at 929–930, 89 L.Ed.2d at 39–40.

The parties stipulated that the township relied on studies pertaining to the negative secondary effects associated with adult businesses when enacting Article 12. Section 1201 states that the resolution was enacted to reduce the negative secondary effects of adult businesses on the community and not to impose a limitation on the content of such businesses. Accordingly, we agree with the trial court that the resolution was a content-neutral regulation of sexually oriented businesses for the legitimate purpose of ameliorating the negative secondary effects of sexually oriented businesses upon the community at large.

Courts have recognized that there is a substantial governmental interest in combating the negative secondary effects of adult businesses on the community. *Renton v. Playtime Theatres, Inc.* (1986), 475 U.S. 41, 50–52, 106 S.Ct. 925, 930–931, 89 L.Ed.2d 29, 39–41; *Brookpark News & Books, Inc. v. Cleveland* (1990), 66 Ohio App.3d 613, 617, 585 N.E.2d 908, 910–911. See, also, *Young v. Am. Mini Theatres, Inc.* (1976), 427 U.S. 50, 62–63, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310, 321–322. A governmental entity may rely on studies of the negative secondary effects of adult uses generated by other cities as support for enacting its own ordinance as long as the studies are reasonably believed to be relevant to the problem the city addresses. *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931, 89 L.Ed.2d at 40; *Barnes v. Glen Theatre, Inc.* (1991), 501 U.S. 560, 584, 111 S.Ct. 2456, 2469–2470, 115 L.Ed.2d 504, 523. Accordingly, we find a substantial governmental interest to support Article 12 of the resolution.

In addition to being content-neutral and providing a substantial governmental interest, a regulation must also be narrowly tailored to meet the stated objectives and must leave open adequate channels of communication. Union Township has not prohibited nude dancing within its boundaries, even though the Supreme Court has determined that restrictions on total nudity are constitutionally permissible. *Barnes*, 501 U.S. at 572, 111 S.Ct. at 2463, 115 L.Ed.2d at 515; *Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265. Instead, the township has chosen to regulate the location of adult uses by segregating them from certain other uses and by dispersing adult uses within the business area. Such regulations are narrowly tailored to serve the governmental interest of unwanted secondary effects from adult businesses. *Renton*, 475 U.S. at 52, 106 S.Ct. at 931, 89 L.Ed.2d at 40–41; *Brookpark News*, 66 Ohio App.3d at 617–618, 585 N.E.2d at 910–912; *Am. Mini Theatres, Inc.*, 427 U.S. at 62, 96 S.Ct. at 2448, 49 L.Ed.2d at 321. Accordingly, we find the regulation is narrowly tailored to meet its stated objectives.

The trial court found there were an adequate number of sites within Union Township to permit the free expression desired through nude dancing. Two experts discussed the availability of sites within Union Township where adult uses may locate. Elliff testified that at least forty parcels were available for location of adult uses. According to Elliff, the area available consists of slightly over one hundred thirty-seven acres. The total area of the township encompasses slightly over one thousand two hundred acres. McLaughlin, ASDF's expert, concluded that only one site, or .006 percent of the total township, was available for adult uses.

ASDF argues that no witness took the stand to rebut the testimony of its expert. While no rebuttal witness took the stand to specifically refute the points made by McLaughlin, the testimony by Elliff on direct examination contradicted

McLaughlin's testimony. Union Township's witness stated that certain sites were available, while ASDF''s witness stated those sites were not available. It was within the trial court's discretion to evaluate the testimony and the credibility of the witnesses. We find that the record contains sufficient evidence to support the trial court's conclusion that ample sites are available to adult businesses. Accordingly, we find that ample alternative sites are available.

 ASDF also argues that Article 12 is an unconstitutional prior restraint. In the First Amendment area of free expression, "a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Publishing Co.* (1988), 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771, 782. A system of prior restraint bears a heavy presumption against its constitutionality. *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448, 458–459; *FW/PBS, Inc. v. Dallas* (1990), 493 U.S. 215, 227, 110 S.Ct. 596, 604, 107 L.Ed.2d 603, 619.

We find that the resolution at issue in this case does not contain the characteristics typically associated with prior restraints. See *Southeastern Promotions,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (exercise of authority not bounded by precise and clear standards); *Shuttlesworth v. Birmingham* (1969), 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (virtually absolute power to prohibit any parade, procession, or demonstration on the streets or public ways); *FW/PBS v. Dallas* (1990), 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (no time limitations on scheme of licensing, zoning, and various inspections, which were more onerous than for other businesses); *Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (system of informal censorship); *Freedman v. Maryland* (1965), 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (requirement of submission of films to censorship board).

In *Southeastern Promotions,* the Supreme Court discussed the characteristics the statute in that case had in common with prior restraints: An individual who desired to engage in constitutionally protected speech was required to apply to a board; the board was empowered to grant or deny expression on the basis of a review of the content of the proposed speech; approval was not a matter of routine; and the decision involved the appraisal of facts, exercise of judgment, and formation of an opinion by authorities. *Southeastern Promotions,* 420 U.S. at 554, 95 S.Ct. at 1244, 43 L.Ed.2d at 456–457.

In the case at bar, while a permit is required before operating a sexually oriented business, the granting or denying of the permit does not hinge on the content of the speech expressed by the business as in *Southeastern Promotions.* Instead, a permit is granted if the adult use meets the requirements provided in the resolution, leaving no room for censorship. The zoning director must grant

or deny the permit within a limited period of time, using the delineated requirements in the regulation. If a permit is denied, the party has a right to appeal to the board of zoning appeals. The zoning director's decision does not involve the exercise of judgment or the formation of an opinion regarding the content of the message.

We find the regulation at issue in this case is similar to the licensing of adult theaters in *Am. Mini Theatres.* In that case, the Supreme Court found no merit in the argument that a regulation was a prior restraint simply because an adult film could not be exhibited without a license. The court found that although a license was required to show an adult film, that requirement was true for all types of films. All theaters were required to satisfy certain locational as well as other requirements. We agree with the Supreme Court that "[t]he mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances." *Am. Mini Theatres,* 427 U.S. at 62, 96 S.Ct. at 2448, 49 L.Ed.2d at 321.

ASDF lastly contends that the presumption of constitutionality as applied to land-use regulations does not apply when the regulation affects preferred or fundamental freedoms like those guaranteed by the First Amendment. As support for this argument, ASDF cites *Schad v. Borough of Mt. Ephraim* (1981), 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671, and *Thomas v. Collins* (1945), 323 U.S. 516, 529–530, 65 S.Ct. 315, 89 L.Ed. 430, 439–440. *Schad* and *Thomas* both discuss the necessity that an ordinance be reviewed under standards that protect free speech. The concurring opinion in *Schad* states that the presumption of constitutionality carries "little, if any, weight where the zoning regulation trenches on rights of expression protected under the First Amendment." *Schad,* 452 U.S. at 77, 101 S.Ct. at 2187, 68 L.Ed.2d at 685–686 (Blackmun, J., concurring).

ASDF also cites *Norton Outdoor Advertising v. Arlington Hts.* (1982), 69 Ohio St.2d 539, 23 O.O.3d 462, 433 N.E.2d 198, paragraph one of the syllabus, and *Brookpark News,* 66 Ohio App.3d at 617, 585 N.E.2d at 910, as further support for this argument. In *Norton,* the Ohio Supreme Court stated that "[w]hen an ordinance, on its face, regulates the content of protected speech, the presumption of validity traditionally accompanying local government's exercise of its police power must fail." *Norton* at paragraph one of the syllabus. ASDF cites *Brookpark* for the proposition that the burden was on the city in that case to present evidence of alternate means of communication.

We are not persuaded by ASDF's argument that the presumption afforded to land-use regulations does not apply in this case simply because a First Amend-

ment freedom is involved. The zoning resolution at issue is neither content based as in *Norton,* nor does it ban all forms of live entertainment as the statute in *Schad,* nor does the authority in *Brookpark* regarding burden of proof have application to this case. We are also unable to find that the speech of nude dancing is a "preferred" or "cherished" freedom. Although finding nude dancing constitutionally protected, the Supreme Court stated that nude dancing is expressive conduct within the "outer perimeter of the First Amendment" and "only marginally so." *Barnes,* 501 U.S. at 565–566, 111 S.Ct. at 2460, 115 L.Ed.2d at 510–512. Recently, the court reiterated this sentiment and stated that nude dancing is expressive conduct, "although we think that it falls only within the outer ambit of the First Amendment's protection." *Erie v. Pap's A.M.,* 529 U.S. at ——, 120 S.Ct. at 1391, 146 L.Ed.2d at 278. We find no persuasive reason to depart from the general presumption of constitutionality of land-use regulations in this case.

In conclusion, we find Article 12 of the resolution is a content-neutral regulation that serves a substantial governmental interest and leaves open adequate channels of communication. Accordingly, the preliminary injunction was properly granted and ASDF's assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.