DECISION AND JOURNAL ENTRY
{¶ 1} Appellant/Cross-Appellee, the City of Akron Board of Zoning Appeals, appeals the decision of the Summit County Court of Common Pleas in an administrative appeal of a zoning dispute. Appellees/Cross-Appellants, Lockhart Construction Co., Inc., and Mike Mazzagatti, d.b.a. Mike's Shakers Auto Salvage Towing (collectively, "Lockhart"), have cross-appealed. This Court reverses with respect to Akron's appeal and affirms with respect to Lockart's cross-appeal.
 {¶ 2} A.R. Lockhart Development Co. has owned property located at 2039 Harlem Road in Akron since 1965. Mike Mazzagatti, d.b.a. Mike's Shakers Auto Salvage Towing, has leased part of the property since 2001. Mazzagatti operates an automobile salvage business, or "junkyard," licensed by the State of Ohio, while Lockhart continues its own operations on-site. On January 26, 2007, the Zoning Inspector for the City of Akron issued an "Order to Comply" to *Page 2 
Lockhart and an unspecified "occupant." The Order to Comply cited several violations of the City of Akron Zoning Code:
 "The JUNK YARD; UNLICENSED AND/OR INOPERABLE VEHICLES STORED ON THE PROPERTY; AND COMMERCIAL VEHICLES PARKED ON NON-HARDSURFACED AREA, DRIVEWAY AND PARKING AREAS NOT PAVED, NO LANDSCAPING BETWEEN THE PARKING AREAS AND THE FRONT PROPERTY LINE; DEVELOPMENT REQUIREMENTS NOT MET on the above-referenced property is in violation of Section(s) 153.310(D)(3) BUSINESS AND INDUSTRY DEVELOPMENT REQUIREMENTS: HARD-SURFACED PAVING REQUIRED FOR PARKING AREAS AND DRIVEWAYS, LANDSCAPING REQUIRED BETWEEN THE PARKING AREAS AND THE FRONT PROPERTY LINE; AND 153.586(A) PERMITTED USES IN A UPD-45 DISTRICT of the City of Akron Zoning Code."
The Order to Comply instructed Lockhart and the occupant to "[discontinue the illegal use(s) and/or violation(s) of this property within 30 DAYS of the service of this order."
 {¶ 3} Lockhart and Mazzagatti appealed to the Board of Zoning Appeals, arguing that the Order to Comply was unlawful because "[t]he property is a nonconforming use as a junk yard." The BZA rejected the appeal on March 28, 2007. Lockhart and Mazzagatti appealed to the Summit County Court of Common Pleas, which considered the appeal on the record from the BZA and briefs. On January 28, 2008, the trial court issued a decision in which it concluded that Mazzagatti's operation of a salvage yard was not a continuation of an existing nonconforming use and concluded "that the BZA's decision on this issue is supported by a preponderance of substantial, reliable, and probative evidence on the whole record, and is not unconstitutional, illegal, arbitrary, capricious, or unreasonable." With respect to the alleged storage violations, however, the trial court reversed. The City of Akron timely appealed, raising one assignment of error. Lockhart cross-appealed, raising one cross-assignment of error.
 ASSIGNMENT OF ERROR "The lower court abused its discretion and erred as a matter of law when it concluded that storing unlicensed and/or inoperable vehicles on the Property *Page 3 
qualified as a legal non-conforming use, merely because the storage of such vehicles was not regulated in the Akron Zoning Code."
 {¶ 4} In its assignment of error, Akron argues that the trial court incorrectly concluded that, "the prohibition against storing unlicensed and/or inoperable vehicles on the property [was] not part of the Zoning Code in 1961," and Lockhart's use of the property for that purpose predated the applicable zoning restrictions. Specifically, Akron has argued (1) that storage of inoperable or unlicensed vehicles is an illegal use or nuisance that has been regulated under its police powers and, therefore, was never a permitted use of the property and (2) that storage of inoperable vehicles was, at best, an accessory use to Lockhart's construction business under the 1961 zoning code.
 {¶ 5} With respect to its first argument, this Court notes that Akron did not argue below that its nuisance ordinance rendered use of the property for storage of inoperable vehicles illegal and, therefore, not a lawful use of the property. In an administrative appeal, failure to raise issues before the court of common pleas forfeits those issues for purposes of appeal. See Gross Builders v. Tallmadge, 9th Dist. No. 22484, 2005-Ohio-4268, at ¶ 36. Accordingly, this Court will not consider this argument for the first time on appeal.
 {¶ 6} Akron's second argument is that the trial court incorrectly determined that storage of inoperable vehicles is a nonconforming use because it was not regulated in the 1961 zoning code. Specifically, Akron maintains that the 1961 zoning code did not include storage of inoperable vehicles as a permitted use in U4 districts under § 1733.01, but only as an accessory use incident to Lockhart's construction business pursuant to § 1733.03(a).
 {¶ 7} When hearing an administrative appeal pursuant to R.C. 2506.04, a court of common pleas must consider "the `whole record,' including any new or additional evidence admitted under R.C. 2506.03," and must determine "whether the administrative order is *Page 4 
unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd. of Zoning Appeals (2000),90 Ohio St.3d 142, 147, quoting R.C. 2506.04. The court of common pleas may "affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." R.C. 2506.04.
 {¶ 8} This Court's review of an appeal from the decision of the court of common pleas is more limited. See Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34. Consequently, this Court must affirm the decision of the trial court unless it appears "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." Id. This Court will not substitute its judgment for that of the board of zoning appeals or the trial court, and "[t]he fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial."Henley at 147, quoting Lorain City School Dist. Bd. of Edn. v. StateEmp. Relations Bd. (1988), 40 Ohio St.3d 257, 261.
 {¶ 9} "A nonconforming use of land is a use that was lawful before the enactment of a zoning amendment, but one which, although no longer valid under the current zoning rules, may be lawfully continued." Wooster v.Entertainment One, Inc., 158 Ohio App.3d 161, 2004-Ohio-3846, at ¶ 45, citing C.D.S., Inc. v. Gates Mills (1986), 26 Ohio St.3d 166, 168. To be considered nonconforming, a use must have been lawful at the time it originated. Petti v. Richmond Heights (1983), 5 Ohio St.3d 129, syllabus. See, also, Pschesang v. Terrace Park (1983), 5 Ohio St.3d 47,48. In other words, "a use not permitted by applicable zoning ordinances when the use was established does not constitute a nonconforming use." Id. at syllabus. *Page 5 
 {¶ 10} The Lockhart property is located in a district that was designated Class U4 Commercial by the 1961 Zoning Code. § 1733.02
provided that "[w]ithin a Class U4 Use District, no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used for other than a Class U3 or U4 Use." Permitted uses in a U4 district included various forms of manufacturing, and as Lockhart notes, property in a U4 district could also be used as a "garage repair shop; body and fender repair shop; [or] tire retreading shop[.]" § 1733.03 provided that "[a]n accessory use customarily incident to a Class U4 Use shall also be permitted[.]" An accessory use, as defined by § 1701.02, is "a subordinate use * * * customarily incidental to, and located upon the same lot occupied by, the main use[.]"
 {¶ 11} Permitted uses in a U3 Retail district included retail, service, and restaurant establishments and some manufacturing. § 1731.02(c) permitted, in certain portions of a U3 district, a "public garage, provided that, all entrances and exits for motorcars, if nearer than 10 feet to a street line shall have a width of not less than 10 feet." § 1731.04 specified some uses permitted as accessory in a U3 district:
"An accessory use customarily incident to a Class U3 Use shall also be permitted in a Class U3 District * * *. A private garage for motor vehicles shall not provide storage for more than one car for each 1,000 square feet of lot area. A service garage permitted as an accessory use in connection with a public garage or a new motor vehicle sales room * * * shall not be located, or occupy any space, on the ground floor within 40 feet of the front street wall of the building * * *."
 {¶ 12} The parties agree — as the trial court concluded — that the 1961 version of the Akron Zoning Code determines what uses of the Lockhart property were permitted in 1965, when Lockhart purchased the property. If the storage of inoperable vehicles was a use permitted by the 1961 Akron Zoning Code, it may have continued as a legal nonconforming use. This, then, is the threshold question: did the 1961 Akron Zoning Code permit storage of inoperable *Page 6 
vehicles on the property and, if so, to what extent? The trial court answered the first question in the affirmative and concluded that the issue was resolved:
 "[T]he Court finds that the paving and landscaping requirements as well as the prohibition against storing unlicensed and/or inoperable vehicles on the property were not part of the Zoning Code in 1961. As such, Appellants' use of the land without complying with such requirements constitutes a valid non-conforming use."
The trial court appears to have reasoned that the 1961 Zoning Code's silence on the issue of storing inoperable vehicles meant that the use was unregulated. Lockhart also construes the trial court's decision to conclude "that the 1961 zoning code did not make any distinction between a licensed vehicle and an unlicensed vehicle * * * [or] an operable motor vehicle and an inoperable motor vehicle." Lockhart therefore equates use of a property for storage of inoperable and/or unlicensed motor vehicles with temporary storage of vehicles incident to repair and space provided for parking services.
 {¶ 13} This Court does not agree. Storage of inoperable and/or unlicensed vehicles was not a use permitted by the 1961 Akron Zoning Code for property within U4 districts. The fact that it was not specifically prohibited does not, as the trial court concluded, mean that it was permitted. Instead, the absence of a specific prohibition gave the Board of Zoning Appeals the ability to grant a variance pursuant to § 1705.05 if appropriate:
 "The Board [of Zoning Appeals] may in specific cases * * * authorize the issuance of a permit for:
 "* * *
 "(g) Any use in any use district that is not specifically prohibited and that is in general keeping with, and appropriate to, the uses authorized in such district[.]"
 {¶ 14} The BZA found, and the parties agree, that Lockhart's construction business was permitted by Chapter 1733 and that storage of automobiles incident to Lockhart's business was an accessory use permitted by § 1733.03. Because the 1961 Akron Zoning Code did not permit *Page 7 
storage of inoperable and/or unlicensed vehicles in a U4 district, storage of those vehicles on the Lockhart property could only be lawful in a U4 property to the extent that it was an accessory use to the construction business. Accordingly, Lockhart could only have a valid nonconforming use for storage of these vehicles as a use accessory to its construction business. Storage of inoperable and/or unlicensed vehicles as a primary use of the property is not a valid nonconforming use. As a matter of law, the decision of the trial court in this respect is not supported by a preponderance of reliable, probative and substantial evidence. Akron's assignment of error is sustained.
 LOCKHART'S CROSS-ASSIGNMENT OF ERROR "The trial court erred in finding that the evidence before the Board of Zoning Appeals permitted an inference that the incidental use of the property had grown to such an extent that it changed the character of the property from a construction storage yard to a salvage yard."
 {¶ 15} Lockhart's cross-assignment of error argues that the trial court incorrectly affirmed the BZA's conclusion that operation of a salvage yard on the Lockhart property was neither a currently permitted nor a continuation of a nonconforming use. Lockhart agrees that the prior use of the property for dismantling, storing, and occasional selling inoperable vehicles was an accessory use to Lockhart Construction's business, but maintains that these uses have not expanded beyond a subordinate use of the property. Lockhart argues that an unsworn statement that use of the property for salvage has expanded could not properly form the basis of the BZA's decision, and that the trial court incorrectly affirmed in reliance on that testimony.
 {¶ 16} This Court concludes that the trial court's decision is, as a matter of law, supported by reliable, probative, and substantial evidence. Even disregarding the unsworn testimony for purposes of argument, the testimony of Mike Mazzagatti established that automobile salvage had become a primary use of the Lockhart property after he entered into the *Page 8 
lease. Mr. Mazzagatti testified that he had obtained a license to operate a "junkyard" at the site; that he leased the property as an overflow lot for his salvage business; and that he uses the property for "storage and dismantling of vehicles[.]" While Lockhart Construction still operates on the property, it appears from the testimony before the BZA that Mazzagatti's business is not affiliated with or incidental to the construction business. Although Lockhart's remaining witnesses testified that vehicle salvage activities had always gone along with the construction business, they did not testify that Lockhart Construction had operated as a salvage business itself — in other words, that vehicle salvage was anything other than an accessory use — at any time prior to Mazzagatti's licensed salvage operation.
 {¶ 17} The decision of the trial court regarding Mazzagatti's use of the Lockhart property as a salvage yard was supported by a preponderance of reliable, probative and substantial evidence. Lockhart's cross-assignment of error is overruled.
 {¶ 18} Akron's assignment of error is sustained. Lockhart's cross-assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part.
Judgment affirmed in part, and reversed in part.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to all parties equally.
 MOORE, P. J., DICKINSON, J., CONCUR. *Page 1